# Perley R. Demers Et Al v. City of Montpelier

[141 A2d 676]

March Term, 1958.

Opinion Filed May 6, 1958.

*John D. Paterson* for the defendant.

*Joseph W. Foti* (*Charles J. Adams,* Of Counsel) for the plaintiffs.

**Holden, J.** This appeal is brought by the City of Montpelier. It concerns the issue of just compensation for taking an improved road, together with water and sewer systems installed below the surface of the roadway.

From facts unchallenged by either side it appears the plaintiffs Demers are the owners of a tract of land in Montpelier, located west of Mountain View Street in that city. In 1951 the plaintiffs caused the area to be surveyed. The survey divided the tract into a plan of lots located along a strip of land, forty feet in width. The strip was designated as "Mountain View Street Extension" on the plan. The plan was filed in the office of the city clerk November 4, 1952. The lots in the tract were sold to different purchasers. Each of the parcels sold was described by reference to the plan. A right of way was granted to the several grantees to afford access to the land conveyed across the area shown on the plan as Mountain View Street Extension. Although the easements are differently stated in the various grants, in general, it is provided that the right of way

over the proposed street shall continue until such time as the City accepts the way as a public street.

In a deed of September, 1952, the plaintiffs agreed to comply with the requirements of the City, necessary to obtain acceptance of the proposed street by the City. By this conveyance, the plaintiffs agreed to lay a water pipe line to supply water to the lot purchased. A later grant in 1954 provided that the grantors would lay a pipe line to supply water to the conveyed premises "so that the same may be accepted by the City of Montpelier." In one instance the plaintiffs entered into a separate undertaking with the purchasers of one lot to install water and sewer lines to enable connection with the Montpelier water and sewer systems.

Mountain View Street Extension was surveyed, constructed, and the water and sewer lines installed in the ground entirely at the expense of the plaintiffs. Although employees of the City performed some labor and services in the project, the City was fully reimbursed by the plaintiffs.

On January 26, 1955, the City Council, by action expressed in formal resolution determined that "the convenience of the inhabitants and the public good required the construction of a public street or highway in the City of Montpelier, which highway would be an extension of an established street in the City of Montpelier known as Mountain View Street." The resolution further states the construction proposed requires the taking of land and rights. February 9, 1955, was appointed as the "time for examining the land and rights to be acquired—and for hearing all parties interested." The city clerk was directed to issue citation and notice to persons interested according to the provisions of the city charter.

By subsequent resolution dated February 25, 1955, it is reported that the plaintiffs appeared after service of the citation previously ordered, and evidence was taken. The resolution further states that "from the evidence presented that the land proposed to be taken including sewer and water lines under said land, which sewer and water lines are connected with the sewer and water systems of the City of Montpelier are subject to the right of passage and use by the owners of several different parcels of land adjoining the proposed street." The resolution

recites: "it appears that the said Perley Demers and Corinne Demers have in effect dedicated the land and sewer and water lines for public use, at least until such time as the City of Montpelier should accept same as a City Street and as a part of their sewer and water systems."

A concluding paragraph of the resolution sets forth: "That in consideration of the facts that the land and rights here taken are subject to the right of use by several adjoining land owners, and that such land has been set apart by the said Perley Demers and Corinne Demers as a street or highway, the City Council finds that the said Perley Demers and Corinne Demers will not be damaged by the taking and acceptance by the City of the land and rights so taken and accepted."

The plaintiffs appealed the result of the action taken by the City Council by petition to the Washington County Court as provided by §5039 V. S. 47, Chapter 236. A commission was appointed, the parties heard, and a report filed. The commissioners concluded that the plaintiffs were not entitled to any compensation or damages. At the hearing before the court on the report, the City urged its acceptance on the ground that the plaintiffs had dedicated the road, water and sewer lines to the public use. The plaintiffs denied this claim and sought the costs they had incurred for surveying the road, putting in gravel, and their cost of laying the sewer and water mains under the highway.

The court rejected the report of the commissioners as to compensation, made findings and entered judgment for an amount that represented the construction costs of the highway, sewer and water lines.

The City, appealing the action by the county court, stakes its claim of error on the undisputed facts reported above. It claims the survey of the tract and its record together with the conveyances and agreements by the plaintiffs with their several grantees constitute an intention to dedicate the property to the public use, as a matter of law. It relies on the resolution of the City Council of February 25, 1955 as an acceptance of the dedication by the City. It contends the legal consequence of the dedication and acceptance relieves the City of any liability to pay compensation to the plaintiffs for the property taken.

By authority conferred by the Legislature in the defendant's charter, the City Council of Montpelier has been vested with the power of eminent domain to lay out and establish highways, sewer and water systems. The defendant's charter provides that this power shall be exercised in the same manner prescribed for selectmen of towns in laying out and establishing highways. Persons aggrieved by the action of the City Council, in the performance of these functions, are afforded the same redress by appeal to county courts as in the case of persons adversely affected by action of selectmen in taking lands for town highways. Acts of 1912, §63, subsections 37, 70, 75 and 77.

The establishment of town highways by the selectmen and appeals from their decision by petition to the county courts are governed by V. S. 47, Chapter 236. *In re Petition of Jacobs*, 116 Vt 11, 12, 68 A2d 710.

The resolution of the City Council of February 25 sets forth that "the City Clerk was directed to issue a citation and notice, in accordance with the provisions of the Charter of the City of Montpelier and the law, containing the names of all persons interested and properties to be affected by the proposed construction;—". The course of conduct followed by the City Council, including the formal adjudication of "public good and convenience", the examination of the premises, the hearing of interested parties, the taking of evidence and the survey by the City Engineer, bear unmistakable identification and conformity to §§5021-5023 of Chapter 236. The appeal that resulted from the decision of the Council followed the statutory course provided in §§5039-5041, of the same chapter.

The record in its entirety establishes, without room for equivocation, that the action commenced by the Council against the land in question is founded in the exercise of the power of eminent domain for purposes entrusted to the Council by statute. It was so treated by all the parties and the court as well.

■■■ A public way is established by statutory condemnation or by dedication and acceptance. *Springfield* v. *Newton*, 115 Vt 39, 43, 50 A2d 605; *Hyde* v. *Jamaica*, 27 Vt

443, 454. Dedication is the setting apart of private lands for public use. But neither the dedication of the property nor the use by members of the public generally will transfer private property rights and liabilities into the public domain. There must be an affirmative acceptance and adoption of the land previously dedicated by the private owner by the duly constituted public officers. *Springfield* v. *Newton, supra,* 115 Vt at 43-45, 47, 50 A2d at 608-609, 610; *Way* v. *Fellows,* 91 Vt 326, 329, 100 A 682.

Admittedly, in the case before us there has been no acceptance by public authority prior to the commencement of these condemnation proceedings. The City's claim to acceptance is founded on the resolution of the Council of February 25, 1955. The resolution was made a month after the condemnation proceedings were started by vote of the Council on January 26, 1955.

The position thus assumed by the defendant seeks to convert a judicial proceeding, *in invitum,* into mere voluntary acceptance of an alleged voluntary dedication. Having resorted to statutory condemnation to acquire title to the plaintiffs' land, the City relies on dedication and acceptance to establish title in the municipal corporation. The plaintiffs' right to compensation cannot be extinguished by this method.

■ The City Council was not at liberty to proceed to condemn the plaintiffs' land, and within the framework of the condemnation proceeding itself, set up a paramount title in the City by dedication and acceptance. *Village of Olean* v. *Steyner,* 135 NY 341, 32 NE 9, 17 LRA 640; *Colorado M. Rwy Co.* v. *Croman,* 16 Colo 381, 384, 27 P 256; 2 Lewis, Em. Dom., 3d Ed. §660 p. 1137; see also, 29 CJS, Em. Dom., §366, p. 1239; 18 Am Jur, Em. Dom., §342, p. 985.

The plaintiffs' ownership of the property sought to be condemned lies at the very foundation of the Council's jurisdiction. To permit the municipality to claim title in the public way it seeks to condemn deprives the proceedings of all foundation. It would render the judicial condemnation proceedings nothing but a sham. *Village of Olean* v. *Steyner, supra,* 32 NE at 9.

■ The defendant's charter and Chapter 236, V. S. 47 grant the City Council authority to take lands of others for the purposes specified, where the public necessity requires, upon the payment of just compensation. The rights and liabilities go deeper than the statutory law applicable. Constitutional guarantees are at stake. Art 2, Chapter I, Vermont Constitution; *Griswold* v. *Weathersfield*, 117 Vt 224, 226, 88 A2d 829; *Sanborn* v. *Enosburg Falls*, 87 Vt 479, 483, 89 A 746. Neither statute nor constitution grant the condemning authority the judicial power to try the title to land claimed by the condemner itself.

In reaching this determination, we are mindful that there appear by way of *dicta* some expressions in *Winooski Lumber Co.* v. *Colchester*, (1885) 57 Vt 538 at 542, that might be construed to the contrary. The question was not squarely before the Court at the time and the facts are somewhat obscure. The defendant has placed no reliance on the opinion of that case. Insofar as it conflicts with our present holding, *Winooski Lumber Co.* v. *Colchester* is overruled.

There remains for consideration the question briefed by the defendant concerning the amount of the compensation awarded by the county court. On this issue, both parties are in accord that the amount of $4322.12, awarded by the judgment below, represents the sum expended by the plaintiffs in constructing the road, sewer and water lines prior to the commencement of this litigation.

■ The defendant has not divested the plaintiffs of their title to the fee in the land itself. *Abell* v. *Central Vt. Rwy.*, 118 Vt 189, 191, 102 A2d 847; *Prince* v. *Braintree*, 64 Vt. 536, 540, 542, 26 A 1095; *Holden* v. *Shattuck*, 34 Vt 336, 342; *Livermore* v. *Jamaica*, 23 Vt 361, 365. Yet, their property has been invaded. The plaintiffs, by private grant, have already burdened the road, sewer and water lines, by private easements created by private grants and agreements. Prior to the taking by the defendant, the remainder continued in the possession of the plaintiffs, for them to use, enjoy and transfer, at their election. See *Eaton* v. *B. C. & M. R. R. Co.*, 51 NH 504, 511; Lewis, Em. Dom., 3d Ed, §63, p. 52. Even though the plain-

tiffs declared their willingness to dedicate their property for the purposes of a street whenever the public authorities would accept the dedication, their property in the land remained in them, subject to their control and enjoyment until the required acceptance was made. *In the Matter of Brooklyn Heights*, 48 Barb (NY) 288. 2 Lewis, Em. Dom. 3d Ed, §743, p. 1326.

■ The defendant now has undertaken a permanent and complete occupation of the plaintiff's road, water and sewer systems. Henceforth, the plaintiffs are excluded. Any permanent occupation of private property for public use at the exclusion of the owner's beneficial use and enjoyment, by eminent domain, must be compensated for by the equivalent in money. *Sanborn v. Enosburg Falls, supra*, 87 Vt at 484, 89 A at 748.

■ The elements of just compensation were not considered in the Sanborn case. No exact formula is available. "No formula will be adequate unless its breadth of view and flexibility of adaptation are fitted and proportioned to the scheme and purpose of the inquest. The problem is one of justice between the individual proprietor on the one hand and on the other hand the sovereign, or representative of sovereign power." Cardozo, J. in *New York O. & W. R. Co. v. Livingston*, 238 NY 300, 144 NE 589, 591, 34 ALR 1078, 1081.

■ In broadest terms, the law measures damage by the market value rule, and awards the landowner the difference between the value of the entire tract before the taking and its value thereafter. *Essex Storage Electric Co. v. Victory Lumber Co.*, 93 Vt 437, 448, 108 A 426. The defendant cites the Essex case to attack the award made. It refers us to expert testimony to the effect that the land remaining appreciated in value by the taking.

This argument fails to comprehend the constituents of the "entire tract" before the taking. The entire tract, before these proceedings were commenced, was comprised of (1) building lots unsold, (2) the forty foot strip of land laid out as a roadway, (3) the improved road itself constructed on the strip, (4) the sewer system, and (5) the water line, subject to the private easements in the road and utilities previously granted

to private owners. The condemnatory action of the City removes from the entire tract such interest as the plaintiffs had previously retained in the roadway, sewer and water conduits.

As indicated in *Essex Storage Electric Co.* v. *Victory Lumber Co., supra,* at 448, the correct award is properly reached "by adding to the value of the property taken, the injury to what remained." The defendant's argument ignores the value of the roadway, sewer and water systems it has appropriated. Its contention is based solely on the testimony of its expert to the effect that the remaining lots have suffered no pecuniary harm. This formula is not the correct legal measure to be applied.

The City also relies on a claimed increase in market value of the lots remaining to offset, as benefits, whatever damage may have been sustained. It relies on *Prince* v. *Braintree, supra,* 64 Vt 540, 26 A 1095; *Adams* v. *St. Johnsbury & Lake Champlain R. R. Co.,* 57 Vt 240, and *Livermore* v. *Jamaica,* 23 Vt 361, to support this claim.

The fact that the remaining lots increased in value because of the new public way does not preclude the plaintiffs from compensation as a matter of right. In *Prince* v. *Braintree, supra,* there was a specific finding by the commissioners that the "benefit to said George Prince of a good highway built and supported by the town through his lands would be equal to his damages." An award of a sum to reimburse the owner for money previously expended, on equitable principles of restitution, was held erroneous. There is no equivalent finding in the record in the present case, to save the defendant.

The nature of the benefit which defeated recovery in *Prince* v. *Braintree, supra,* does not appear in the reported case. In *Adams* v. *St. Johnsbury & Lake Champlain R. R. Co., supra,* the Court held that the benefits which may be charged to the landowner, in reduction of his compensation, must be direct and peculiar to the property retained. General advantages shared by the claimant with other property owners, occasioned by a general rise in property values, cannot be assessed against the plaintiffs. Allowance of set off for general benefits would exact contribution from the claimant for equal benefits enjoyed

by his neighbors without charge. This holding modified the general statement of *Livermore* v. *Jamaica, supra*, at 361. As to the Livermore case, see also, *Sanborn* v. *Enosburg Falls, supra,* 87 Vt 484, 89A 748, overruling this case on another point.

■■ "Benefits which come and go with changing currents of travel are not matters in which any individual has any vested right." *Nelson* v. *State Highway Board*, 110 Vt 44, 53, 1 A2d 689, 118 ALR 915. They are not compensable against the state when traffic is diverted by relocation of a highway. *Nelson* v. *State Highway Board, supra*, at 53. Conversely, such benefits should not be charged against him when public traffic is directed to his property.

A searching analysis of the elements of compensation that result from the taking of the property rights similar to those here involved, is expressed in *Beals* v. *Inhabitants of Brookline*, 245 Mass 20, 139 NE 492, 495. There, the petitioner in 1890 was the owner in fee of a large tract of land in Brookline which he divided into lots, and across which he laid out a way. At his own expense, the landowner graded and constructed the way and laid a sewer and constructed drains. Prior to the taking in 1920, the petitioner sold all the lots abutting on the roadway, granting to the purchasers, appurtenant rights in the roadway, sewer and drains. It was held that the petitioner was not confined to nominal damages as a matter of law. The opinion points out that elements of value might reside in the utilities, despite the fact that the property had been burdened with private easements at the time of the taking. To be sure, the real value is less, if the outstanding private easements are substantially equivalent to the public easement acquired by the condemnation. But they are not without intrinsic value.

■■ There, as in our case, the rights condemned are not subject to frequent trade in the market, in the sense that the market can fix the price. They have no market value as such. In this situation, evidence of their cost, within the limits of materiality in point of time and circumstance, may be considered. But neither the cost of the improvements, nor their worth to the City can be recovered, as such. *Beals* v. *In-*

*habitants of Brookline, supra,* 139 NE at 495. To the same effect is *Prince* v. *Braintree, supra,* 64 Vt at 542, 26 A 1095. See also annotation in 172 ALR 236.

█ Thus, while the cost of the construction of the highway, sewer and water systems was properly before the court as a circumstance to be considered in determining the value of the properties taken, the cost could not fix the compensation. "Value is a word of many meanings." *Missouri ex rel Southwestern Bell Telephone Co.* v. *Public Service Commission,* 262 US 276, 310, 43 S Ct 544, 554, 67 L Ed 981, 995. Cost and value, obviously, are not the same in fact or law. *Kintner* v. United States, 156 F2d 5, 172 ALR 232, 235.

The original value of the property may be reduced according to the nature and number of easements previously granted to abutting owners. If the original property had been heavily burdened to the point where the rights in the abutting owners were substantially equivalent to the public easement sought to be acquired by the municipality, the compensation recoverable would be small. See *Boston Chamber of Commerce* v. *Boston,* 195 Mass 338, 81 NE 244, 246. Yet, if elements of value persist in the property retained by way of sale or rental value for the use of the road, sewer and water lines to persons not presently enjoying easements as abutting owners, the value of the unexpended rights is recoverable. Value might also reside in the prospect that the original landowners might reacquire the easements previously granted, to unburden the property and enable them to obtain full enjoyment of the land for other or more valuable purposes. If these, or other elements of value, can be efficiently demonstrated, and they exceed the cost of maintenance, of which the plaintiffs will be relieved by the defendant's taking, it cannot be said the plaintiffs will sustain only nominal damages. *Beals* v. *Inhabitants of Brookline, supra,* 245 Mass 20, 139 NE 492, 495.

It does not appear that these factors were presented to the County Court. It does appear that the court below predicated its award on the basis of the plaintiffs' expense incurred in constructing the roadway, water and sewer lines. No attention was given to the easements previously conveyed to abutting

owners. Construction costs alone were made the criterion for compensation. This constitutes error.

*Judgment as to liability affirmed. Judgment as to damages reversed. Cause remanded for a new hearing on the issue of damages.*